# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**BENNIE WARD**                                                                           **PLAINTIFF**

**v.**                                            **No. 4:12CV106-SA-RP**

**CHRISTOPHER EPPS, ET AL.**                                       **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Bennie Ward, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

The plaintiff alleges that the defendants failed to provide him with adequate medical care for his skin condition, and that, when he requested treatment by a specialist, Nurse Lisa Tucker retaliated against him by having him transferred to the Mississippi State Penitentiary ("Parchman"). This court issued a memorandum opinion and final judgment dismissing all of these allegations for failure to state a claim upon which relief could be granted. The Fifth Circuit affirmed the dismissal of the claims for denial of medical care, but vacated the dismissal of the retaliation claim against Nurse Tucker, holding that, when "considering only the pleadings" the plaintiff had "alleged a chronology of events from which retaliation may plausibly inferred."

The Fifth Circuit based its ruling on the plaintiff's allegation that, after he filed an April grievance regarding medical treatment for his rash, in May, Nurse Tucker orchestrated his transfer to the Mississippi State Penitentiary in Parchman ("Parchman") for the duration of a new treatment

prison doctors were administering. The Fifth Circuit held that, "[t]hough Ward does not specifically state that Parchman is more dangerous than Alcorn, that can reasonably be inferred based on Ward's description of Tucker's acts as threats and intimidation" – that Nurse Tucker might have ordered the transfer in retaliation for the plaintiff's repeated requests to be treated by a dermatologist.

After remand, Nurse Tucker filed a motion for summary judgment. The plaintiff has responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the motion by the defendant for summary judgment will be granted, and judgment will be entered for the defendant.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings. Rather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id*. The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356, "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct.

3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

**Undisputed Material Facts**

The sole remaining claim in this case is plaintiff's allegation of retaliation, and the following facts are either not in dispute – or are allegations by the plaintiff that the court will, for the purposes of the instant motion only, assume to be true. The plaintiff has suffered a chronic itchy skin rash since 1999. Prison medical staff initially tried several treatments with no success before discovering that Mycolog cream could hold the itchy rash at bay, though did not actually cure the rash. Medical staff continued treating the rash with Mycolog until 2011, when Dr. Lorenzo Cabe and another prison doctor discontinued the treatment due to its high cost. The plaintiff was housed at the Alcorn County Regional Correctional Facility ("Alcorn County") at the time, which did not have a full-time medical doctor on staff. In the absence of Mycolog, prison medical staff at Alcorn County tried other treatments, which provided partial relief from the itching, but not complete relief, as the Mycolog had

provided. Ward repeatedly requested treatment by a Free World dermatologist, but his requests were denied.

In April 2012, Ward filed a grievance regarding medical care for the itchy rash. Ward alleges that Alcorn County Nurse Lee, on behalf of Nurse Tucker, said that he if continued requesting treatment by a dermatologist, then he would be moved to Parchman – the location of the Mississippi Department of Corrections Hospital, otherwise known as Unit 42. Nurse Tucker, Dr. Kim, and Dr. Cabe – the medical professionals who treated Ward – work at Unit 42 full-time. On June 27, 2012, after submitting another medical request about the itching, Ward was transported to Parchman and treated there at Unit 42. He saw Dr. Kim, who referred him to Dr. Cabe. After examining Ward, Dr. Cabe ordered Nurse Tucker to change Ward's medical class to Class III and request to have him transferred to Parchman so he could be scheduled for punch biopsies. Nurse Tucker made that request and scheduled Ward to return to see Dr. Cabe for the biopsies on July 5, 2012. Dr. Cabe also told her to request that Ward be re-housed at Parchman until the biopsy results became available. The biopsy was performed on July 5, 2012, as scheduled, and Nurse Tucker set an appointment for Ward to return a week later for follow-up with Dr. Cabe. On July 12, 2012, Dr. Cabe examined Ward, decided to treat the rash with CTM (Clotrimazole), and ordered that Ward be returned to the clinic in a month. Nurse Tucker then scheduled Ward to return on August 8, 2012, slightly less than a month, in accordance with Dr. Cabe's orders. Dr. Cabe examined Ward on August 8, continued treatment with CTM, and removed the medical hold. Nurse Tucker counter-signed the orders to remove the medical hold at 12:43 p.m. that same day. Ward's Case Managers – Spearman and Hill – were notified that Ward had been medically cleared to return to Alcorn County Regional Correctional Facility. He was transferred on October 5, 2012, from Parchman to Central Mississippi Correctional Facility, and five days later to Bolivar County Regional Correctional Facility.

Though Nurse Tucker is involved in scheduling appointments and changes in medical classification, she has no control over the timing of prisoner transfers or the new locations of the prisoners, which are at the discretion of the Mississippi Department of Corrections. Likewise, medical staff have do not control over where, in a specific facility, a prisoner will be housed, as the Mississippi Department of Corrections must take into account many factors other than medical classification in making that decision, such as security risks to the inmate and other, the presence of other inmates who, for security reasons, cannot be housed with the transferee, etc. Although Dr. Cabe, through Nurse Tucker, can change an inmate's medical class and request a transfer to facilitate treatment, it is ultimately the decision of other MDOC staff to determine where, in a given facility, that an inmate will be housed.

### No Material Facts Are in Dispute

In his response to Nurse Tucker's summary judgment motion, Mr. Ward has listed items that he argues constitute disputed material facts:

(1) Whether it was necessary to rehouse him in Unit 29 C-Building for the biopsy procedure and provide the proper medical treatment;

(2) Whether his condition was the type that required a transfer to Unit 29 C-Building;

(3) Whether the care and attention he received could only be achieved through a transfer to Parchman;

(4) Whether he could have received similar medical care without being moved to "a more hostile environment;"

(5) Whether the plaintiff's condition became worse because of his placement in Unit 29 C-Building;

(6)  Whether there was an absence of a medical reason to move him to "a more hostile environment," such as Unit 29 C-Building;

(7)  The date Nurse Tucker gave for deciding to move the plaintiff to Parchman (June 27, 2012), differs from the date the nurse at Alcorn County relayed to him; and

(8)  Ultimately, whether the transfer to Parchman was necessary for diagnosing and treating his condition.

Items 1, 2, 3, 4, 6, and 8 are substantially the same issue:  Mr. Ward questions whether his relocation to Parchman was absolutely necessary to diagnose and treat his chronic itching rash problems – a question of medical opinion, not fact.  Item 5 involves only the questions of injury and damages – not the validity of the retaliation claim, while item 7 involves an immaterial difference in the date Nurse Tucker remembers deciding that Ward should be moved to Parchman.  These are not issues of fact necessary for decision in this case.

### Treatment by Parchman Doctors, Rather Than an Outside Specialist

It is clear from his pleadings, motions, and other submissions to the court that Mr. Ward's true frustration arises from two sources:  (1) that the best treatment he had previously received, Mycolog cream, was discontinued due to its high cost, and (2) that, despite the partial effectiveness of other treatments, prison medical staff kept trying them and would not send him to a dermatologist.  He reiterated these claims in his response to the instant summary judgment motion.  In affirming the dismissal of Mr. Ward's claims for denial of adequate medical care, the Fifth Circuit held that "[t]he deliberate indifference standard . . . does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society," and that "failure to receive the most effective treatment cannot form the basis of deliberate indifference but, rather, sounds in negligence."  *Ward v. Fisher, et al.*, 13-60125 at 5-6 (5th Cir. 2015)

(quoting *Morris v. Livingston*, 739 F.3d 740, 748 (5th Cir.), *cert. denied*, 134 S.Ct. 2734 (2014) and *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). Similarly, the Fifth Circuit rejected his claim regarding the decision not to send him to a dermatologist. *Id*. at 5. As these claims have been decided, the court will not address them again.

**No Evidence of Retaliation**

Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). On the other hand, courts must view such claims with skepticism to keep from getting bogged down in every act of discipline prison officials impose. *Id*. The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). A prisoner seeking to establish a retaliation claim must also show that the prison official's conduct was sufficiently adverse so that it would be capable of deterring a person of ordinary firmness from exercising his constitutional rights in the future. *Winding v. Grimes*, 4:08CV99-FKB, 2010 WL 706515 at 3 (S.D. Miss. Feb. 22, 2010); *citing Morris v. Powell*, 449 F.3d 682, 684–85 (5th Cir. 2006) at 685. A single incident involving a minor sanction is insufficient to prove retaliation. *Davis v. Kelly*, 2:10CV271-KS-MTP (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)), 2:10CV271-KS-MTP, 2012 WL 3544865 *Id.*). Similarly, inconsequential (*de minimis*) acts by prison officials do not give rise to an actionable retaliation claim. *See Morris* at 685.

In this case, Bennie Ward must prove that he engaged in constitutionally protected activity (seeking medical care), faced significant adverse consequences (transfer to a more dangerous housing

unit), and that such action was taken "in an effort to chill [his] access to the courts or to punish [him] for having brought suit." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir.1987). The showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

The Fifth Circuit has made clear the dangers of permitting retaliation claims to proceed in the absence of factual allegations to support an inference of a retaliatory motive. In *Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988), the plaintiff, Daniel Johnson, had filed numerous lawsuits against administrators and staff within the Texas prison system. The defendants then denied Johnson's request to have his custody status upgraded, and Johnson alleged that the denial was in retaliation for filing his previous suits. *Id.* The Fifth Circuit rejected Johnson's claim – and explained why courts must insist upon specific factual allegations to support an inference of retaliation:

> If we were to hold that [Johnson] by his allegations in this case had established a case which was entitled to the full panoply of discovery, appointment of counsel, jury trial and the like, we would be establishing a proposition that would play havoc with every penal system in the country. Prison administrators must classify and move prisoners. It is a virtual truism that any prisoner who is the subject of an administrative decision that he does not like feels that he is being discriminated against for one reason or another, such as the past filing of a grievance, a complaint about food or a cellmate, or a prior complaint that he was not being treated equally with other prisoners. If we were to uphold the further pursuit of [Johnson's] complaint in this case we would be opening the door to every disgruntled prisoner denied the next level of trustyship, reassigned to another prison job, moved to another cell, [or] claiming his shoes were uncomfortable, to bring such a suit.

*Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988). Prisoners routinely request medical care and file grievances on an ongoing basis, for any number of reasons. As such, it is not

uncommon for a prisoner to file a medical grievance, and, if the problem requires more intensive treatment, to be transferred to a location with better medical facilities (in this case, Parchman). Thus, to avoid turning nearly every adverse change in circumstances of a prisoner into a claim of retaliation, courts insist upon additional allegations or evidence to substantiate a retaliation claim, such as prison staff issuing threats of disciplinary action if an inmate files further grievances, staff members pulling an inmate aside to threaten him, members of prison staff perpetrating unprovoked acts of violence against an inmate, or prison staff members wholly fabricating charges of prison rule violations against an inmate. *See Decker v. McDonald*, 2010 WL 1424322 (E.D. Tex. 2010) (Magistrate Judge's Report and Recommendation) (unpublished), adopted by the District Court, 2010 WL 1424292 (E.D. Tex.) (unpublished).

Mr. Ward's claim of retaliation fails for three reasons: (1) Every one of Nurse Tucker's actions led directly to his testing and treatment at the Mississippi Department of Corrections Hospital; (2) As Nurse Tucker has no control over where inmates are housed, she could not have caused him to be housed in Unit 29 C-Building; and (3) There is not a shred of documentary evidence supporting Mr. Ward's assertion that Nurse Tucker threatened to have him moved specifically to Unit 29 C-Building.

Mr. Ward alleges that Nurse Tucker, in retaliation for his repeated requests to visit a dermatologist (as well as a grievance regarding the denials of that request), ordered that he be moved from the Alcorn County Regional Correctional Facility to Unit 29 C-Building at the Mississippi State Penitentiary – a place that he alleges is far more dangerous than Alcorn County – and did so about a month after Mr. Ward filed the grievance. Nurse Tucker works at the Mississippi Department of Corrections Hospital at Unit 42 at the Mississippi State Penitentiary ("Unit 42"). She was employed by Wexford Health Sources, not MDOC, during the times relevant to this case. Ward was transferred to Parchman on July 5, 2012, where he was tested and treated for his skin rash on an ongoing basis.

Once testing was complete, he was reclassified medically and cleared for transfer (by Dr. Cabe, counter-signed by Nurse Tucker) on August 8, 2012, a little more than a month later. However, Ward was not actually transferred from Parchman until October 5, 2012, some 58 days after he was medically cleared to leave. In total, Mr. Ward remained in Unit 29 C-Building from July 5, 2012, until October 5, 2012 – for 92 days. He was then transferred temporarily to the Central Mississippi Correctional Facility, and, ultimately, to the Bolivar County Regional Correctional Facility – a housing location he had previously requested in a grievance.

Mr. Ward argues that, in his estimation, it was unnecessary to move him to Unit 29, as MDOC personnel could have transported him to and from Parchman as necessary to carry out his treatment plan – because Alcorn County conducted weekly van trips to the Mississippi State Penitentiary so that inmates could be treated at the hospital there. Mr. Ward would have preferred weekly transport to and from Parchman, rather than a temporary transfer there. Because weekly transport was available, he believes that the biopsies, lab work, diagnosis, and follow-up treatment were merely a pretext for having him transferred to Unit 29 C-Building, which he characterizes as the most dangerous building "on that side of the wall." He also argues that he could have received the same or similar treatment while housed at Alcorn County. As Mr. Ward views his move to Parchman unnecessary, he has inferred that Nurse Tucker must have ordered it to punish him for seeking outside medical help from a dermatologist.

For her part, Nurse Tucker points out that a member of medical staff cannot order that an inmate to be moved at all; she can only request such a move. In addition, she notes that, even when a medical staff member's request is honored, that member has no control over where, precisely, an inmate is housed upon arrival at the new facility. She also states that she did not make the decision to change Ward's medical class or have him transferred to Parchman; instead, Dr. Cabe made that

decision. It is undisputed that Parchman medical staff saw Mr. Ward immediately upon his arrival, took biopsies of the affected areas, reviewed lab results, decided upon a course of treatment, carried out the treatment, followed up to check on his progress, released his medical hold, and cleared him for transfer as soon as the effectiveness of the treatment became apparent. All of this occurred within 34 days. The delay of 58 days before he was actually transferred was entirely beyond Nurse Tucker's control.

Ward's claim of retaliation must be dismissed because he has only his personal belief that Nurse Lisa Tucker orchestrated his move to Unit 29 C-Building – or did so out of retaliation. After summary judgment briefing, the court holds there is no series of events from which a retaliatory motive could be inferred. Bennie Ward wanted to continue treatment with the expensive cream, but the Mississippi Department of Corrections would not permit it. Likewise, he wanted a referral to a Free World dermatologist, and the Mississippi Department of Corrections medical staff rejected that claim, as well. He was housed at the Alcorn County Regional Correctional Facility at the time, which did not have a full-time medical doctor. As such, if he wished to have more extensive treatment, the remaining option was to be treated at the Mississippi Department of Corrections Hospital at Unit 42 – which has full-time doctors, nurses, and other medical staff, as well as testing and diagnostic equipment. Without the option of sending Ward for outside treatment, Dr. Cabe, through Nurse Tucker, requested that he be transferred temporarily to Parchman. Though prison doctors and nurses can request prisoner transfers for medical reasons, they have no control over the timing of such a move, the final housing assignment of the inmate, or even whether the transfer will be carried out. Prisoner transfers are at the sole discretion of the Mississippi Department of Corrections, and Nurse Tucker is not employed by the Department of Corrections.

Mr. Ward *now* alleges, in his response to Nurse Tucker's motion for summary judgment, that she told the Alcorn County nurse (and later Ward himself) that, if he requested a specialist again, she would have him transferred *specifically to Unit 29 C-Building* at Parchman. ECF 45, p. 1. However, this is the first time he has made this allegation. Throughout his complaint, Mr. Ward alleged only that Nurse Tucker would transfer him to "Parchman" (the location of the Mississippi Department of Corrections' only hospital), *not* to specifically to Unit 29 C-Building. See ECF 1 (Complaint), p. 3, 7, 8, 10. The first time Mr. Ward even mentioned Unit 29 was in his Notice of Appeal, in which he noted only that he was "transferred to Unit 29 (not Unit 42 Hospital)", not that Nurse Tucker specified Unit 29. ECF 9 (Notice of Appeal), p. 6. This is an important distinction, as the court is aware from countless prisoner cases over the years that Parchman houses inmates with varying needs – from those who pose a high security risk, such as Death Row inmates, gang members, and others – to medium-risk inmates – to inmates who pose so little security risk that they have achieved Trusty status. In addition, Parchman has facilities for keeping inmates who are disabled, going through substance abuse recovery, or are transitioning from prison back into society. Further, as do all prisons, Parchman has areas devoted to keeping inmates segregated from one another (Administrative Segregation).

In vacating the dismissal of Mr. Ward's retaliation claims, the Fifth Circuit held that, "[t]hough Ward does not specifically state that Parchman is more dangerous than Alcorn, that can reasonably be inferred based on Ward's description of Tucker's acts as threats and intimidation." Parchman is a vast place; the various units are distant from each other; the units have separate buildings, and the buildings have separate secure areas inside to house inmates. An area housing Trusties is a safe one, by prison standards; one housing Death Row inmates and gang members is far more dangerous, and others fall somewhere in between. Though Nurse Tucker may, through a doctor, *request* that an inmate be transferred to "Parchman" (an enormous prison compound) she has no control over where he is

ultimately placed once he arrives. Placement of prisoners depends on knowledge and expertise outside the purview of medical staff and is handled by prison security staff. Thus, Nurse Tucker could not have known ahead of time whether Ward, upon transfer to Parchman, would be placed in housing safer or more dangerous than the one he left.

In addition, despite Mr. Ward's allegations to the contrary, documentary evidence shows that his testing and treatment began immediately upon his arrival at Parchman and continued for 34 days. At that time, Dr. Cabe concluded that Mr. Ward's rash was the result of an allergic reaction, instructed him to observe over time to see what substance caused the reaction, provided a prescription for a medication that had provided partial relief, and released him from Medical Class III so he could be transferred away from Parchman. Nurse Tucker merely counter-signed the release. At that point, whether, when, and where Mr. Ward was transferred was entirely in the discretion of Mississippi Department of Corrections officials – and out of Nurse Tucker's hands. The documentary evidence thus shows that Nurse Tucker's role regarding Mr. Ward was limited to: (1) requesting (on Dr. Cabe's behalf) that Mr. Ward be transferred to Parchman for treatment at the Unit 42 Hospital – and that he be assigned Medical Class III, (2) assisting in his medical treatment during his stay at Parchman, and (3) counter-signing Dr. Cabe's order that Mr. Ward's medical hold be released so that he could be transferred away from Parchman. Nothing in the documentary evidence suggests that Nurse Tucker acted with retaliatory intent – or that she even had the power to direct when and where Mr. Ward would be transferred.

Ward suggests that, based upon the testing, diagnosis, and treatment he received during his stay at Parchman, Dr. Cabe and Nurse Tucker should have left him at Alcorn County and let him take the weekly van that shuttles inmates to and from Alcorn County and Parchman. He alleges that the decision to request that he transfer temporarily to Parchman originated with Nurse Tucker – and was

motivated out of malice because he requested treatment from a dermatologist.  He also alleges that Nurse Tucker specified that he would be transferred to Unit 29 C-Building at Parchman.

First, Mr. Ward has never explained why his request for treatment by a dermatologist (and his later grievance seeking the same relief) might offend Nurse Tucker (or other medical staff) and motivate her to take retaliatory action.  Second, as discussed above, the request that Mr. Ward be transferred to Parchman for treatment originated with Dr. Cabe, not Nurse Tucker, who simply passed the request along to corrections staff.  Third, medical staff may only *request* that an inmate be transferred; the final decision rests with Mississippi Department of Corrections staff.  Fourth, even if a medical staff request for a prisoner transfer is granted, the staff member has no control over the place the prisoner will ultimately be housed once he arrives at the facility.  Fifth, it is undisputed that the Unit 42 Hospital at Parchman is a full hospital – staffed with full-time doctors, nurses, technicians, and other medical staff, while Alcorn County did not even keep a full-time doctor on staff.  As such, when Ward was housed at the Mississippi State Penitentiary, he was closer to the hospital for monitoring and follow-up – and to take corrective action if he had an adverse reaction to his treatment.  The plaintiff's allegations of retaliation are wholly without merit and will be dismissed.

**Conclusion**

For the reasons set forth above, the motion [34] by the defendant for summary judgment will be granted, and judgment will be entered for the defendant.  A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 28th day of November, 2016.

                                                      **/s/ Sharion Aycock**
                                                      **U.S. DISTRICT JUDGE**